IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

STEPHEN A. SANTORO

    Plaintiff,

v.

ALTISOURCE SOLUTIONS, S.à.r.l,
ALTISOURCE PORTFOLIO SOLUTIONS,
SA, and JOHN DOE ALTISOURCE CO.,

    Defendants.

Case No. 6:15-cv-00399-AA
OPINION AND ORDER

Manuel C. Hernandez
Hernandez & Associates, LLC
P.O. Box 979
Bandon, Oregon 97411

Bonner C. Walsh
Walsh, LLC
P.O. Box 7
Bly, Oregon 97622
    Attorneys for plaintiff

Page 1 - OPINION AND ORDER

Sara A.H. Sayles
Emilie K. Edling
Houser & Allison, APC
9600 S.W. Oak Street Suite 570
Portland, Oregon 97223
    Attorneys for Defendants

AIKEN, Judge:

    Plaintiff Stephen A. Santoro resided with his family at a property in Bandon, Oregon. In January 2013, Ocwen Loan Servicing, LLC filed a judicial foreclosure action against plaintiff on behalf of GMAC Mortgage LLC.[1] Before the foreclosure was complete, plaintiff alleges that Ocwen ordered defendants Altisource, SA and Altisource, S.à.r.l. or their agents to forcibly enter plaintiff's home and perform certain pre-foreclosure property preservation services, including changing the locks and winterizing the property. Compl. ¶¶ 7-8 (doc. 1). Plaintiff also alleges that defendants removed several items of personal property from his home. *Id.* ¶ 10.

    In this action, plaintiff asserts claims of conversion, negligence, negligent hiring, and violations of the Oregon Fair Trade Practices Act. Defendants filed this motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).[2] For the reasons set

---

[1] The relationship between Ocwen, GMAC, and defendants is not entirely clear from the record. What is clear is that GMAC owned the mortgage on plaintiff's home and began judicial foreclosure proceedings, a summons was issued for Ocwen as the servicer of the loan, and according to the complaint Ocwen sought the services of defendants as a means of self help before the foreclosure could be concluded. Compl. ¶¶ 5-6 (doc. 1).

[2] Defendants also moved to dismiss plaintiff's claims for trespass and intrusion upon seclusion under Rule 12(b)(6). Def. Mot. to Dismiss 19 (doc. 30). Plaintiff subsequently withdrew these claims and the court accordingly dismissed them. Doc. 41.

forth below, I find that this Court has personal jurisdiction over the S.à.r.l. and the motion to dismiss is denied.[3]

## STANDARDS

Where the court lacks personal jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(b)(2). When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that such jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citation omitted). Where the court makes its jurisdictional finding based on pleadings and affidavits rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Id.* "Although the plaintiff cannot rest solely on the allegations of the complaint to establish that jurisdiction is proper, the complaint's uncontroverted factual allegations must be accepted as true and any factual conflicts in the parties' declarations must be resolved in the plaintiff's favor." *Ukrvaktsina v. Olden Grp., LLC*, 2011 WL 5244697, *2 (D. Or. Oct. 30, 2011) (citations omitted).

## DISCUSSION

In order for a court to have the power to render judgment against a non-resident defendant, the plaintiff must show that the nature and quality of the non-resident's contacts are sufficient to establish either "general" or "specific" personal jurisdiction. *Helicopteros Nacionales de Columbia,*

---

[3]Plaintiff concedes that defendant Altisource Portfolio Solutions, SA is a holding company with no employees and therefore "jurisdiction will not lie as to APS." Pl.'s Supplemental Resp. Mot. Dismiss 2 (doc. 50). Therefore all claims against APS are hereby dismissed. This leaves only the S.à.r.l. and defendant "John Doe Altisource Co." Plaintiff expressed interest in amending the complaint to replace the John Doe company with Altisource, Inc. *Id.* Plaintiff is free to seek leave amend the complaint, but must do so in accordance with Local Rule 15 by formal motion with a proposed amended complaint attached as a separate exhibit. This order and opinion concerns only whether this Court has personal jurisdiction over the S.à.r.l.

Page 3 - OPINION AND ORDER

*S.A. v. Hall*, 466 U.S. 408, 414–15 (1984). Plaintiff argued that this court has both general and specific jurisdiction over the S.à.r.l. While I am not persuaded that general jurisdiction exists over the S.à.r.l., the record supports the exercise of specific jurisdiction.

I.  *General Jurisdiction*

General jurisdiction exists when a non-resident defendant has enough contacts with the forum that are "so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 755 (2014). In the instant case, plaintiff alleges the S.à.r.l. has contacts with Oregon through its contract with Kitsap, a Washington corporation. Plaintiff points to the fact that Kitsap conducts property preservation services on the S.à.r.l.'s behalf at over one hundred Oregon properties. Walsh Decl. Ex 1 at 6 (doc. 50). Plaintiff argues this Court has general jurisdiction over the S.à.r.l. because Kitsap's contacts with Oregon in managing those properties may be imputed to the S.à.r.l. That arguments is squarely foreclosed by Ninth Circuit precedent. *See Ranza v. Nike*, 793 F.3d 1059, 1071 (9th Cir. 2015) (concluding that, after *Daimler*, "[t]he agency test is . . . no longer available" to establish general jurisdiction).

Plaintiff also argues there is general jurisdiction over the S.à.r.l. because all the Altisource entities, including the S.à.r.l., are part of a multi-layered "shell game" designed to evade personal jurisdiction. Pl.'s Supplemental Resp. Mot. Dismiss 2-3. I agree there is some evidence in the record to support this assertion. In order to exercise general jurisdiction on this theory, however, I would have to conclude both (1) that it is appropriate to pierce the corporate veil and disregard the usual rules of "corporate separateness," *Ranza*, 793 F.3d at 1070, and (2) that the Altisource entities are "essentially at home" in Oregon, *Daimler*, 134 S. Ct. at 755. I need not reach those questions because I conclude this Court has specific jurisdiction over the S.à.r.l.

Page 4 - OPINION AND ORDER

II. *Specific Jurisdiction*

The Ninth Circuit has established a three-prong test for analyzing a claim of specific jurisdiction.

1. The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

2. the claim must be one which arises out of or relates to the defendant's forum-related activities; and

3. the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Fred Martin Motor Co.*, 374 F.3d at 802. A non-resident principal may purposefully direct its activities toward a forum through the actions of its agents. *Daimler*, 134 S. Ct. at 759 n.13. The S.à.r.l., a foreign corporation based in Lichtenstein, contracted with Kitsap to perform pre-foreclosure inspections and other related services. Def. Mot. to Dismiss at 10 n.2 (doc. 30). If Kitsap acted as the S.à.r.l.'s agent when it entered plaintiff's home and performed the property preservation services, the first prong of the specific jurisdiction test will be satisfied. For reasons listed below, I find that the S.à.r.l. exerts enough control over the day to day actions of Kitsap to create a master/servant agency relationship.[4]

---

[4] Defendants have requested that the Court take judicial notice of certain documents relevant to the agency analysis. Def. Req. For Judicial Notice (doc. 31). All but one of these documents are all a matter of public record, and the remaining document is a promissory note, the authenticity of which I have no reason to doubt. *See Roberston v. Wells Fargo Home Mortg.*, 2011 WL 5157772, *3 (D. Or. 2011). Defendants' request for judicial notice is granted. *See* Fed. R. Evid. 201.

Page 5 - OPINION AND ORDER

A.      *Kitsap as an Agent of the S.à.r.l.*

Oregon follows the Restatement (Second) of Agency test to determine when a servant/master agency relationship exists. *Schaff v. Ray's Land & Sea Food Co., Inc.*, 45 P.3d 936, 945 (Or. 2002). This test asks the court to weigh ten different factors:

- The extent of control which the master may exercise over the details of the work;

- Whether the one employed is engaged in a distinct occupation or business;

- Whether the occupation is usually performed by an employee or by a specialist;

- The level of skill or specialization required;

- Who supplies the tools and/or materials for the work;

- The duration of employment;

- The method of payment;

- Whether the work is part of the regular business of the employer;

- The belief of the parties regarding whether they are entering into a master/servant relationship; and

- Whether the principal is or is not in business.

*Id.*

Under Oregon law, the greatest emphasis is placed upon the first factor, the extent of control a principal has over its potential agent. *Miller v. McDonald's Corp.*, 945 P.2d 1107, 1110 (Or. App. 1997). In *Miller*, the Oregon Court of Appeals noted a distinction between "standards" and "methods" in a potential principal-agent relationship. To demonstrate this distinction, the *Miller* court cited *Wood v. Shell Oil Co.*, 495 So.2d 1034 (Ala. 1986), and *Billops v. Magness Const. Co.*,

Page 6 - OPINION AND ORDER

391 A.2d 196 (Del. 1978). *Miller*, 945 P.2d at 1110. In *Wood*, the parties were under a franchise agreement which required a Shell gasoline dealer "to maintain the station premises, including the appearance [of the premises]... in accordance with Shell's specifications or recommendations," and "to perform all mechanical work in a workmanlike manner." *Miller*, at 1110-1111. The Alabama court decided that there was no actual agency relationship because the franchise agreement "did not control *how* the dealer complied with the requirements." *Id.* By contrast, the *Billops* case involved a franchise agreement which incorporated a "detailed" operations manual governing a variety of areas including advertising, cleaning and inspection service, accounting, insurance, and maintenance. *Id.* at 1111. The *Billops* court held that the evidence was sufficient to support a finding of an agency relationship because the manual "described the *methods* by which the franchisee was to carry out its responsibilities in considerable detail." *Id.* (emphasis added).

In *Miller*, a woman sued the McDonald's corporation after biting into a heart-shaped sapphire in her Big Mac. 945 P.2d at 1108. McDonald's argued it could not be held liable for the plaintiff's injuries because the restaurant where the injury took place was operated by a franchise owner and not the corporation. *Id.* The Oregon Court of Appeals held a jury could hold McDonald's vicariously liable by finding an agency relationship existed between McDonald's and the franchise owner. This was because the jury permissibly could interpret the franchise agreement to "require . . . [the franchise owner] to use the precise *methods* that [McDonald's] established, both in the Agreement and in the detailed manuals that the Agreement incorporated." *Miller*, 945 P.2d at 1111 (emphasis added). Those methods included procedures for preparing food, deviation from which led to the plaintiff's injuries. *Id.* A jury could find that McDonald's "had the right to control [the franchise owner] in the precise part of its business that allegedly resulted in the plaintiff's injuries."

Page 7 - OPINION AND ORDER

Plaintiff has produced extensive evidence to show that the S.à.r.l. exercised a great deal of control over the methods used by Kitsap in performing property management services. The relationship between the S.à.r.l. and Kitsap is governed by a contract. The contract states that "[Kitsap] must provide the Services in accordance with [the S.à.r.l.'s] instructions," and that failure to follow these instructions will require that Kitsap "immediately perform or re-perform the Services, as the case may be, on an urgent basis, at [Kitsap's] expense[.]" Walsh Decl. Ex. 4 at 2 Jul. 29, 2016 (doc. 51). It also emphasizes that payment for these services is contingent on Kitsap's "STRICT COMPLIANCE WITH THE REQUIREMENTS SET FORTH IN THIS AGREEMENT." *Id.* at 3 (capitalization in original). The contract itself does not define what services will be provided. Instead it states that "[t]he term 'Services' shall mean inspection, assessment, security, preservation and/or maintenance of certain properties . . . all as described more particularly in the Guide." *Id.* at 15. "Guide" is defined as "The Altisource Vendor Guide, as may be modified from time to time." *Id.*

The Guide lays out detailed instructions for property inspection, preservation, and a variety of other services. Defendants argue that the Guide does not provide instructions about "how to interact with individuals at the property." Supplemental Reply Br. in Supp. of Mot. to Dismiss 7 (doc. 53). This is demonstrably untrue. In the section governing "FHLMC-Contact Inspection," a service Kitsap was ordered to conduct at Plaintiff's property, Walsh Decl. Ex. 3 at 7 Jul 29, 2016 (doc. 51), the instructions state that the Vendor, in this case Kitsap, must

> knock on the door and attempt to verify the person's name, relationship to the borrower and hand them the call back notice . . . . Vendor is PROHIBITED from using such terms as default, foreclosure, delinquent when speaking to the occupant. Instead, use the phrase "We are attempting to verify occupancy on behalf of the mortgage company."

Page 8 - OPINION AND ORDER

Walsh Decl. Ex. 5 at 16 Jul. 29, 2016 (doc. 50) (capitalization in original). The Guide also directs where to post notices, and instructs the vendor to take photographs of the property. *Id.*

Defendants also argue that the Guide does not provide instructions on "what tools to use [for Vendors] to do their work." Supplemental Reply Br. in Supp. of Mot.to Dismiss 7. This is also untrue. The instructions for pre-foreclosure winterization (which Kitsap was ordered to perform on the Plaintiff's property, Walsh Decl. Ex. 3 at 2 Jul. 29, 2016 (doc. 51)) include directions to use zip ties to secure water valves in the "off" position, to blow out water lines with an air compressor, to slow the evaporation of anti-freeze with "a stretch wrap over the [toilet] bowl," and to clean the toilets "with a brush." Walsh Decl. Ex. 5 at 54-56 Jul. 29, 2016 (doc. 50). The Guide also includes photos demonstrating the use of these tools. *Id.* This is not a general statement that toilets are expected to be clean and winterized, or that they will be held to a high standard of cleanliness. It is specific direction regarding how to clean and winterize toilets and with what tools.

Kitsap was also ordered to obtain a lock box and change the locks on Plaintiff's property. Walsh Decl. Ex. 3 at 8-9 Jul. 29, 2016 (doc. 51). The Guide includes instructions for these services as well, detailing the type of lock box to use, what the default combination for said lock box should be, and the type and model of lock to install on the entrance of properties. Walsh Decl. Ex. 5 at 29-30 Jul. 29, 2016 (doc. 50). The Guide provides precise instructions on how to store locks that have been removed from doors. It states that locks

> should be stored in the kitchen cabinet drawer just to the side of the sink. If there is no such cabinet available, then use the kitchen wall cabinet to the side of the sink. If that is not possible, tie the keys together with the keys in the lock, and hang it on a nail[.]

Page 9 - OPINION AND ORDER

*Id.* at 31.[5]

Plaintiff also brings evidence that vendors like Kitsap were subject to "field checks" by "regional field service manager[s]." Walsh Decl. Ex. 1 at 4 Jul. 29, 2016 (doc. 50). These field checks are conducted in order to evaluate "the condition of the property and the work of the vendors." *Id.* Although these checks were done by a different Altisource affiliate than the S.à.r.l., the field checks show that if Kitsap did not adhere to the instructions laid out in the Guide, then there would be consequences as stated in their contract.

While the S.à.r.l.'s 313-page Vendor Guide lays out some standards for fulfilling the obligations of their contract, it also states the specific methods and tools to be used for certain services, for example, the use of zip ties, air compressors, and stretch wrap in winterizing houses. These are not mere standards as defendants contend, but instead are methods for conducting these services which Kitsap was ordered to perform at plaintiff's property. Thus, as in *Miller* and *Billops*, the record supports the notion that the S.à.r.l. had the right to control Kitsap "in the precise part of its business that allegedly resulted in the plaintiff's injuries." *Miller*, 945 P.2d at 1111.

As to the other nine agency factors, three weigh in favor of Kitsap's independence. Kitsap operates as a distinct business, Kitsap was paid on a task by task basis, and both Kitsap and the S.à.r.l. believed they were forming an independent contractor relationship. Walsh Decl. Ex. 4 at 7 & Ex. 5 at 279 Jul. 29, 2016 (doc. 51). Five of the remaining factors weigh in favor of a

---

[5]The Guide also provides precise rules for services other than those at issue in this lawsuit. For example, Kitsap performed yard maintenance at plaintiff's property. Walsh. Decl. Ex. 3 at 6 Jul. 29, 2016 (doc. 51). The Guide provides instructions in this matter that include the frequency of grass cuts, the length the grass should be kept at, and the method for collecting leaves and removing them from the property. Walsh Decl. Ex. 5 at 38-39 Jul. 29, 2016 (doc. 50). The Guide specifically states that "The removal of dry leaves is to be performed by collecting the leaves in the mower discharge bag and disposing of them offsite." *Id.* at 39.

Page 10 - OPINION AND ORDER

master/servant agency relationship. Kitsap's work does not require the aid of a specialist, the work (while physically strenuous at times) does not require any specialized skill or education, the agreement can be terminated at the S.à.r.l.'s discretion, the work is part of the S.à.r.l.'s regular business, and the S.à.r.l. itself is a business. Walsh Decl. Ex. 4 at 2-3, 7 Jul. 29, 2016 (doc. 51). The final factor does not weigh in favor of either outcome. While it appears that Kitsap supplies its own tools and materials, the S.à.r.l. provides case management software to keep track of work orders and billing. Walsh Decl. Ex 4 at 16-17 Jul. 29, 2016 (doc. 50). Given all of these factors and according substantial weight to the "right to control" factor, I am convinced that the relationship between the S.à.r.l. and Kitsap is sufficient to permit the exercise of personal jurisdiction over the S.à.r.l.[6] Resolving all factual conflicts in plaintiff's favor, I conclude S.à.r.l. purposefully directed its activities toward Oregon through its agent, Kitsap.[7]

### B. *Remaining Considerations*

With respect to the second prong of the specific jurisdiction test, it is clear that this claim arises out of Kitsap's property preservation services performed on plaintiff's former home, and thus this prong is satisfied. The only remaining consideration is reasonableness. I find the exercise of specific jurisdiction reasonable here. While I am aware that defendant may be inconvenienced by a ruling in favor of personal jurisdiction, that inconvenience carries limited weight because the S.à.r.l

---

[6]Defendants argue in their Supplemental Reply Brief that "the actors at the property were independent contractors of Kitsap." Def.'s Suplemental Reply Br. at 8 (doc. 53). Not only is there no evidence to support this claim, but the contract between Kitsap and the S.à.r.l. states that the Vendor is solely responsible for the performance of the Services. Walsh Decl. Ex. 4 at 18 (doc. 50).

[7]Whether an agency relationship exists is a question of fact. *Miller*, 945 P.2d at 1114. Should this case proceed to trial, the jurisdictional findings in this opinion would not preclude the S.à.r.l. from arguing to the jury that it is not vicariously liable for Kitsap's actions.

is a large corporation with many subsidiaries all around the United States. Furthermore, this district appears to be the most efficient forum for adjudicating the dispute. *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995). Since the events took place in Oregon, most if not all material witnesses reside nearby, and the bulk of evidence can likely be found in Oregon. Also, Oregon has a very strong interest in furnishing its citizens with a forum to remedy their injuries. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984). Thus I find that jurisdiction is reasonable and all three requirements for specific jurisdiction are satisfied.

## CONCLUSION

Resolving all factual conflicts in plaintiff's favor, the S.à.r.l. exercised sufficient control over Kitsap to establish a master/servant agency relationship. Through that relationship, the S.à.r.l. purposefully directed its actions toward Oregon, those actions gave rise to this action, and jurisdiction is reasonable. This court has personal jurisdiction over the S.à.r.l.

Defendants' motion to dismiss (doc. 30) is DENIED. Defendants' request for judicial notice (doc. 31) is GRANTED. Defendants' request for oral argument is denied as unnecessary.

Dated this 11th day of October 2016.

*Ann Aiken*
Ann Aiken
United State District Judge